**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AJAY NEHRA, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 2014 cv _____ |
| RUSH MEDICAL COLLEGE, RUSH | ) |
| UNIVERSITY, RUSH UNIVERSITY MEDICAL | ) |
| CENTER, an Illinois Corporation and THOMAS | ) |
| A. DEUTSCH, M.D., | ) |
| | ) |
| Defendants. | ) |

## <u>COMPLAINT</u>

Now comes Plaintiff, AJAY NEHRA, M.D., by his undersigned counsel, and for his complaint against Defendants, RUSH MEDICAL COLLEGE, RUSH UNIVERSITY, RUSH UNIVERSITY MEDICAL CENTER, an Illinois corporation (collectively, "Rush") and THOMAS A. DEUTSCH, M.D. ("Deutsch") (Rush and Deutsch may be referred to collectively as "Defendants"), respectfully states as follows:

### *PRELIMINARY STATEMENT*

1.     Ajay Nehra is an extraordinary physician with an exemplary record who was actively recruited by Rush and Deutsch to come to Chicago and lead Rush's Department of Urology as its Professor and Chairperson.

2.     But shortly after signing a five-year contract with Dr. Nehra in March 2013, Rush and Deutsch began to undermine Dr. Nehra's authority as Department Chair in a misguided effort to pursue their perceived financial interests – all at the damage and expense to Dr. Nehra and his excellent reputation.

3.     After a series of hollow (and pretextual) complaints about his leadership style, Rush (who acted principally through Deutsch) improperly and without cause removed Dr. Nehra as Department Chairperson and installed a more compliant "acting" chair, not to lead the department, but to follow Deutsch's and Rush's improvident demands. Rush's and Deutsch's improper conduct even violate Rush's own governing by-laws that define tenure and academic integrity. When Rush and Deutsch refused to remedy their own misconduct, Dr. Nehra was compelled to file this lawsuit.

### NATURE OF THE ACTION

4.     Plaintiff brings this diversity claim for breach of a March 13, 2013 written contract appointing him the tenured Chairperson of the Department of Urology at Rush Medical College of Rush University for a period of five years, ending at the conclusion of Rush's fiscal year 2018.

5.     Despite Dr. Nehra's tenure and written employment agreement for a period of years, on or about September 12, 2014, Rush, acting through Defendant Deutsch, purported to terminate his position as Chairperson of the Urology Department (although not his status as a member of the department) (the "Termination") and wrongfully issued a public press release announcing the same.

6.     Rush's Termination of Dr. Nehra was without cause, as defined in his written employment agreement, and was entirely pretextual.

### PARTIES

7.     Plaintiff, a renowned urologist, left Mayo Clinic in 2013 to join Rush as the Chairperson of its Department of Urology.

2

8.      Despite that appointment, Dr. Nehra has not become a resident of Illinois, but still maintains his residency in Rochester, Minnesota.

9.      Defendant Rush Medical College is the Medical School of Rush University and has its principal place of business in Chicago, Cook County, Illinois.  On information and belief, Rush Medical College is a division of Rush University Medical Center, an Illinois corporation with its principal place of business in Chicago, Cook County, Illinois.

10.     Defendant Rush University is a private university having its principal place of business in Chicago, Cook County, Illinois.  On information and belief, Rush University is also a division of Rush University Medical Center, an Illinois corporation with its principal place of business in Chicago, Cook County, Illinois.

11.     Thomas A. Deutsch, M.D. is the Provost of Rush University and the Henry P. Russe Dean of Rush Medical College.  On information and belief, Deutsch is an Illinois resident.

### JURISDICTION AND VENUE

12.     This Court has jurisdiction under 28 U.S.C., § 1332(a)(1) because Plaintiff is a citizen of a different state than the Defendants and the amount in controversy is greater than $75,000.

13.     Venue of this action in this District is proper under 28 U.S.C., § 1391(b)(1) and (2) because all of the Defendants reside here and at least a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District.

### BACKGROUND FACTS

14.     In 2013, Deutsch presented Dr. Nehra with a letter (the "Letter") dated March 13, 2013 appointing Dr. Nehra as Chairperson of the Department of Urology at Rush from that time

through the end of Rush's fiscal year 2018 (the "Term"). (A true and correct copy of the Letter is attached as *Exhibit A*).

15.     In sending the Letter, Deutsch acted as an agent for both Rush University and Rush College having at least apparent authority to make the offer set forth in the Letter.

16.     The Letter specifically incorporates by reference the Policies and Procedures of Rush Medical College (the "Policies") (a true and correct copy of the Policies is attached as *Exhibit B*) and the Rush University Rules For Governance (the "Rules") (a true and correct copy of the Rules is attached as *Exhibit C*).

17.     The Letter, the Policies and the Rules must be read together as one integrated contract (the "Agreement").

18.     The Letter appoints Plaintiff to the position of "Chairperson of the Department of Urology in Rush Medical College of Rush University" for the Term. (Letter, Ex. A, at 1, ¶ 1.) The status of being a full professor is an inherent aspect of being appointed to chair the department.

19.     The Policies state that an appointment as a full professor "shall be tenured." (Policies, Ex. B, § 2(f)(c) at 4.)

20.     The Rules provide as follows regarding the terms and conditions of employment for tenured professors at Rush University colleges:

> Tenure is the commitment of a College to a faculty member and denotes a status of continuing faculty appointment, providing protection against involuntary suspension, discharge, or termination except for financial exigency or cause as outlined in the Rules of Governance.

(Rules, Ex. C, § 2(i)(10) at 7.)

4

21.     The Rules define the "cause" sufficient for discharge or suspension of a tenured professor at a Rush college to include any of eight specified reasons.  (Rules, Ex. C, § 3(c)(1)-(8) at 12.)

22.     The reasons which are defined by the Rules to constitute cause for discharging a tenured employee generally reach serious misconduct.  (*See*, *e.g.*, Rules, Ex. C, § 3(c) (3) (violation of professional ethics), (5)(conviction of a crime), (6) (loss of professional licensure) and (7) (professional incompetence)).

23.     On September 12, 2014, Deutsch sent an email blast to the "Rush Distribution List" announcing that Plaintiff had "stepped down as chairperson, and will continue his clinical and research activities in the department."

24.     On information and belief, Deutsch's email was also shared with others in the medical community outside of Rush.

25.     At a professional conference of Urologists held in Chicago shortly after September 12, 2014, Plaintiff observed that his change in position was virtually universally known to his colleagues.

26.     Under the Agreement, Plaintiff is entitled to a base salary of $800,000 per year plus incentive bonuses.  (Letter, Ex. A, at 1, ¶ 4.)

27.     On or about September 19, 2014, Deutsch sent Plaintiff a letter informing him that Rush had unilaterally reduced his compensation to $510,000 per year.  (A true and correct copy of the September 19 letter is attached as ***Exhibit D***.)

28.     No action or omission of Plaintiff gave Rush "cause," as defined in the Rules, to discharge or suspend him as the Chairperson of the Urology Department at any relevant time or at any time prior to when Rush publicly announced the Termination.

29.     Defendants cited no financial exigency as the reason for Plaintiff's Termination; on information and belief, none exists.

30.     Because of his tenured position and Chairperson, Plaintiff enjoyed "a status of continuing faculty appointment" absent cause for discharge or financial exigency.  Ex. C, Rules, § 2(i)(10) at 7.

31.     At the time of his Termination, Plaintiff was publicly known to persons in the relevant medical community to be the Chairperson of the Urology Department at Rush, a prestigious position that relevant members of the community would assume included tenure rights.

32.     Because relevant members of the medical community would assume that Plaintiff enjoyed a tenured position, Defendants' abrupt public announcement of Plaintiff's Termination from the position as Chairperson necessarily suggests that the discharge was for cause.

33.     Because cause to terminate Plaintiff did not exist at the time of his Termination, Defendants' public announcement of that act necessarily created the false impression that Plaintiff had engaged in some form of serious wrongdoing or professional misconduct that warranted his Termination.

34.     In addition, the wording of Defendant Deutsch's September 12, 2014 message that Plaintiff "had stepped down" falsely suggests that Plaintiff had recognized that his conduct had provided good reason to step down from the position of Chairperson of the Department and that he had agreed to do so voluntarily, essentially admitting that cause to remove him from that position then existed.

35.     Plaintiff did not agree to or approve of the wording of the September 12, 2014 announcement of his Termination before Rush and Deutsch issued it.

36.    By reason of their conduct in announcing the Termination, Defendants conveyed to members of the relevant medical community who are important to Plaintiff's continued professional stature, respect and success, the false message that Plaintiff must have engaged in some form of serious wrongdoing or professional misconduct to create cause for Rush to terminate him as Chairperson and the additional false message that Plaintiff, himself, recognized and conceded that such serious wrongdoing had occurred.

### COUNT I

### BREACH OF CONTRACT
### AGAINST ALL RUSH DEFENDANTS

37.    Plaintiff incorporates the allegations of paragraphs 1 through 36 as the allegations of this paragraph.

38.    The parties' Agreement provides Plaintiff with the legal right to continue as Chairperson of the Department of Urology at Rush College and to continue to receive all benefits and perquisites of that position through the end of Rush's fiscal year 2018 absent cause for discharge or financial exigency.

39.    Defendants' Termination of Plaintiff before the completion of the Term without cause or financial exigency constitutes a material breach of the parties' Agreement.

40.    Injury to Plaintiff as a result of Defendants' false communication of the Termination was a reasonably foreseeable result of Defendants' breach of the Agreement.

41.    Plaintiff has been damaged by Defendants' breach of the parties' Agreement in one or more of the following ways:

   a.    Plaintiff has lost a large portion of the salary promised him under the Agreement.

   b.    Plaintiff has lost the "status of continuing faculty appointment" as Chairperson which entitled him to a renewal of the Agreement at the conclusion of the Term.

7

    c.   Plaintiff's reputation with other Urologists and hospitals in the relevant medical community has been damaged by Defendants' public statements concerning the Termination.

42.    Plaintiff has suffered damages as the direct and proximate result of Defendants' material breach of the Agreement in an amount to be proved at trial, but, in any event, well in excess of $75,000.

43.    Because Plaintiff's position as the Chairperson of the Urology Department at Rush was unique and not replaceable, Plaintiff is entitled to reinstatement as specific performance of the Agreement.

### COUNT II

### DEFAMATION PER SE
### AGAINST ALL DEFENDANTS

44.    Plaintiff incorporates the allegations of paragraphs 1 through 43 as the allegations of this paragraph.

45.    Defendants' statement concerning Plaintiff's Termination was defamatory as to Plaintiff because that statement caused harm to Plaintiff's reputation in the relevant medical community by lowering his esteem in the eyes of his peers and by deterring his peers and prospective employers from associating professionally with Plaintiff.

46.    As can be seen by the salary differences between Plaintiff's compensation under the Agreement as Department Chair and his current compensation under Rush's September 19, 2014 letter as a professor, the ability to perform in a Chairperson role is financially valuable.

47.    Defendants' statement concerning Plaintiff's Termination was defamatory *per se* as to Plaintiff because its words falsely suggested that cause for his Termination as Department Chair existed and thereby imputed to Plaintiff an inability to perform or want of integrity in the

discharge of his professional duties as Chairperson of Rush's Urology Department, all of which substantially impaired Plaintiff's ability to ever again obtain a position as a Chair of a Urology Department at a major medical school.

48.     Defendants' statement concerning Plaintiff's Termination was defamatory *per se* as to Plaintiff because its words falsely suggested that cause for his Termination as Department Chair existed and thereby imputed to Plaintiff a lack of ability in his profession which substantially impaired Plaintiff's ability to ever again obtain a position as a Chair of a Urology Department at a major medical school.

49.     Defendants' statement about the termination is not reasonably susceptible to an innocent construction because all constructions suggest the existence of cause for Termination which has been recognized and conceded by Plaintiff, both of which are untrue.

50.     At the time that Defendants publicly Terminated Plaintiff, they each knew or should have known that their statement about Plaintiff's Termination was false because no cause to Terminate Plaintiff then existed and because Defendants then knew that Plaintiff did not agree and recognize that any such cause existed.

51.     At the time that Defendants publicly Terminated Plaintiff, they each knew or should have known that their statement about Plaintiff's Termination would result in pecuniary loss to Plaintiff.

52.     Plaintiff has, in fact, suffered a loss to his professional and personal reputation in the United States medical community which will make it impossible for him to now obtain a position in medical practice that is as remunerative as the position that Plaintiff could have obtained absent Defendants' statement falsely communicating that he has been discharged for cause.

53.     Plaintiff has suffered damages as the direct and proximate result of Defendants' wrongful and tortious conduct in an amount to be proved at trial, but, in an event, well in excess of $75,000.

## COUNT III

### FALSE LIGHT INVASION OF PRIVACY
### AGAINST ALL DEFENDANTS

54.     Plaintiff incorporates the allegations of paragraphs 1 through 53 as the allegations of this paragraph.

55.     At the time that Defendants publicly terminated Plaintiff, they each knew or should have known that a statement falsely suggesting both cause for termination from a prestigious tenured position as the Chair of a Department and the terminated person's recognition that such cause existed would be highly offensive to a reasonable person.

56.     Defendants made their public statement about Plaintiffs' discharge either knowing or in reckless disregard of whether their statement would create the false impression in the relevant medical community that Plaintiff had been discharged for cause and that Plaintiff had agreed and conceded that such cause existed and also that their statement would cause such a false impression and place Plaintiff in such a false light.

57.     Because Rush knew or should have known at the time that it publicly Terminated Plaintiff that Plaintiff had not engaged in any form of serious wrongdoing or professional misconduct to create cause to terminate him under the Agreement, Rush knowingly published a statement about Plaintiff that it knew would mislead and confuse members of the relevant medical community, leaving them with a false impression and placing Plaintiff in the false light that Plaintiff had engaged in serious professional or personal misconduct while performing his duties as Chairperson of the Urology Department at Rush.

10

58.     Despite this knowledge, Defendants each acted in at least reckless disregard of the false light that it would focus on Plaintiff within the relevant medical community in issuing their statement.

59.     Plaintiff has suffered damages as the direct and proximate result of Defendants' wrongful and tortious conduct in an amount to be proved at trial, but, in any event, well in excess of $75,000.

**WHEREFORE**, Plaintiff, Ajay Nehra, MD, demands judgment against Defendants, Rush Medical College, Rush University, Rush University Medical Center Corporation and Thomas A. Deutsch, M.D. as follows:

A.     For reinstatement to his position as Chairperson of the Urology Department at Rush for the remainder of the Term;

B.     For compensatory damages arising from Defendants' breach of contract and defamatory damage to Plaintiff's reputation, in an amount to be shown at trial; and

C.     Punitive damages in an amount sufficient to discourage Defendants from repeating their wrongdoing.

### DEMAND FOR JURY TRIAL

60.     Plaintiffs demand a trial by jury of all issues so triable.

Dated:  September 24, 2014

Respectfully submitted,

**Ajay Nehra, M.D.**


By:    /s/   Thomas C. Cronin
            One of his Attorneys

**CRONIN & CO., LTD.**
Thomas C. Cronin
Leland W. Hutchinson, Jr.
161 North Clark Street
Suite 2550
Chicago, Illinois  60601
T: 312.201.7100
F: 312.201.7100