# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AJAY NEHRA, M.D., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 14 C 7445 |
| RUSH UNIVERSITY MEDICAL CENTER, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dr. Ajay Nehra, a physician specializing in urology, has sued his former employer Rush University Medical Center for breach of contract. Rush moved for partial summary judgment on several points related to contract interpretation and damages. For the reasons stated below, the Court grants Rush's motion as it relates to the damages issues it raises and denies the motion on the contract interpretation issues.

## Background

Dr. Nehra was a practicing urologist at Mayo Clinic in Minnesota before Rush recruited him. Rush hired him as a professor in April 2012. Dr. Nehra then signed a Faculty Employment Agreement (FEA) that took effect in July 2012. The agreement conferred the status of faculty member with the title of professor. The FEA described the services Dr. Nehra was to perform (called "effort allocations"), and it set his annual salary at $800,000. The agreement provided for an "initial term" of one year and stated that it would automatically renew for additional one year terms unless one of the parties

provided notice of intent not to renew at least 120 days before the end of any term; the agreement was terminated based on the parties' inability to agree on any modification to Dr. Nehra's salary or services that Rush might propose; or the agreement was terminated pursuant to the provisions of the "General Terms and Conditions" attached to the agreement, which permitted termination by mutual agreement or by Rush for cause, defined as follows:

> 3.2 Termination for Cause by Rush. Rush will have the right to terminate this Agreement immediately by giving written notice to Faculty Member or Faculty Member's designee, upon the occurrence of any of the following events:
>
> (a) Faculty member's failure to maintain any of the qualifications required under Section 1.1 of this Exhibit C;
>
> (b) Faculty Member's breach of any other material provision of this Agreement if such breach is not cured to Rush's reasonable satisfaction within thirty (30) days after Rush gives Faculty Member written notice identifying such breach;
>
> (c) Faculty Member commits or permits any act or conduct which, in the good faith determination of Rush: (a) endangers the health, life or safety of any patient, Rush employee or other person; (b) Rush's participation in any federal health care program, any license necessary to conduct any business operated by Rush or Rush's accreditation status; (c) harm to the reputation of Rush; or (d) constitutes professional misconduct, or fraudulent or criminal behavior;
>
> (d) Faculty Member's conviction, in any jurisdiction, of a crime involving moral turpitude or a felony;
>
> (e) Faculty Member's death; or
>
> (f) To the extent not prohibited by applicable law, Faculty Member's disability. . . .

Second Am. Compl. Ex. C (Faculty Employment Agr.), Ex. C § 3.2.[1]

---

[1] The FEA is Exhibit C to Nehra's second amended complaint, and the "terms and conditions" attachment is Exhibit C to the FEA.

In or about March 2013, Rush appointed Dr. Nehra to the position of Chairperson of the Department of Urology. The details of this appointment were laid out in an Offer Letter that both parties signed. Second Am. Compl., Ex. D. The Offer Letter stated that Dr. Nehra's "initial appointment as Chairperson will be for 5 years, through FY 2018." *Id.* § 3. His salary remained the same as before, but the Offer Letter stated that he would be eligible for a chairperson incentive plan starting in fiscal year 2014 as well as a housing allowance. *Id.* §§ 4, 5. The Offer Letter stated that Dr. Nehra's FEA "will continue in effect," albeit with an amended "effort allocation" section to reflect his new duties, and it stated that as Chairperson he would be "subject to the provisions of the Policies and Procedures of Rush Medical College of the Rush University Rules for Governance" [sic]. *Id.* §§ 3, 4. The letter also contained other terms regarding plans for developing and improving the Urology Department. *Id.* §§ 6-9.

In September 2014, Rush removed Dr. Nehra from the position of Chairperson and notified him that his clinical physician privileges would cease shortly thereafter. After terminating him, Rush sent an e-mail to its Distribution List announcing that Dr. Nehra had "stepped down" as Chairperson. At the end of September 2014, Dr. Nehra filed suit against Rush alleging breach of contract. In January 2015, Rush notified Dr. Nehra that it would not renew his FEA when it expired on July 1, 2015 and that it would place him on administrative leave in March 2015. Dr. Nehra then amended his breach of contract suit to include a contention that this termination constituted a further breach of contract.

## Discussion

A party may move for partial summary judgment by identifying each claim or

3

defense—or the part of each claim or defense—on which summary judgment is sought. Fed. R. Civ. P. 56(a). Although parties "should not pursue a needlessly piecemeal litigation strategy," the Seventh Circuit has held that "partial summary judgment can serve a useful brush-clearing function." *Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 606 (7th Cir. 2015). A party is entitled to partial summary judgment if it "shows that there is no genuine dispute as to any material fact" regarding the subject for which summary judgment is sought. Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists only if there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013).

**1.    Contract interpretation**

Ordinarily, "contract interpretation is a subject particularly suited to disposition by summary judgment." *Metalex Corp. v. Uniden Corp. of Am.*, 863 F.2d 1331, 1333 (7th Cir. 1988). At the summary judgment stage, the Court determines "whether the contract is ambiguous or unambiguous as a matter of law." *Id.* Under Illinois law, which the parties agree applies in this case, if a contractual term is susceptible to reasonable alternative interpretations, it is ambiguous. *See Thompson v. Gordon*, 241 Ill. 2d 428, 441, 948 N.E.2d 39, 47 (2011). Contract interpretation "generally becomes a question for the jury" if the Court finds ambiguity. *Harmon v. Gordon*, 712 F.3d 1044, 1051 (7th Cir. 2013). An exception to this rule allows for the consideration of undisputed extrinsic evidence to determine the parties' intent. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 (7th Cir. 2012). If the extrinsic evidence is undisputed and leads to only one reasonable interpretation, the Court may decide the matter on

summary judgment. *See id.*

The parties dispute how Dr. Nehra's Faculty Employment Agreement (FEA) and the Offer Letter that made him department Chairperson interrelate when it comes to termination or non-renewal. As indicated earlier, the FEA provided several routes for non-renewal or termination: giving 120 days' advance notice of a party's intention not to renew the agreement for another year; termination after good faith efforts to come to an agreement regarding a proposed modification by Rush of Dr. Nehra's salary or effort allocations; termination by mutual agreement; termination by Dr. Nehra due to a material breach by Rush; or termination by Rush for cause as defined in the General Terms and Conditions.

The Offer Letter, which as noted earlier provided for appointment of Dr. Nehra as department Chairperson for a five year term, says nothing about termination. In his second amended complaint, Dr. Nehra alleges that the Offer Letter effectively amended the FEA and superseded its term permitting either party to elect not to renew that agreement prior to the end of Dr. Nehra's five year term as Chairperson. Second Am. Compl. ¶¶ 11-15. More significantly, Dr. Nehra alleges that the Offer Letter essentially incorporated the FEA's termination provisions and thus that Rush could terminate him as Chairperson only if there was "cause" as defined in the General Terms and Conditions attached to the FEA—which, he alleges, there was not. *Id.* ¶¶ 15-28. Dr. Nehra contends that his removal from the position as Chairperson and the subsequent termination of his FEA constituted breaches of contract. *Id.* ¶¶ 47-48.

Rush agrees that it could terminate Dr. Nehra as Chairperson prior to the end of his five-year term only for cause. *See* Def.'s Mem. in Support of Mot. for Partial Summ.

5

J. at 8; Def.'s Reply at 7. Rush, however, bases this not on the FEA but rather on Illinois common law, which holds that an employment contract for a fixed term may be terminated only for cause. Def.'s Mem. in Support of Motion for Partial Summ. J. at 8. Rush also contends that the definition of "cause" is supplied not by the FEA but rather by Illinois common law. *Id.* Rush argues that the Offer Letter did not supersede the FEA's provision permitting each party to elect annually not to renew the agreement. Rather, Rush contends, the only effect of the Offer Letter on the FEA was its promise to keep the FEA in effect, a promise that Rush reads as extending only so long as Dr. Nehra remained as department Chairperson. Upon a proper termination of Dr. Nehra as Chairperson, Rush argues, it was entitled to elect not to renew the FEA.

It appears that there are two contract interpretation-related disputes that are relevant on the present motion for partial summary judgment. Dr. Nehra argues that the Offer Letter appointing him as department Chairperson modified the FEA in the sense that it superseded the term allowing annual nonrenewal by either party. *See* Pl.'s Mem. in Opp. to Mot. for Partial Summ. J. at 6. The Court agrees with Rush that this seems to amount to a non-issue: both sides agree that so long as Dr. Nehra's Chairperson appointment was in place, Rush was required to renew the FEA. *See id.* at 6 n.1; Def.'s Reply at 7, 8. This is the rather obvious meaning (or at least part of the rather obvious meaning) of the Offer Letter's term stating that "[y]our Faculty Agreement will continue in effect . . . ." Second Am. Compl., Ex. D § 4.

The second dispute concerns the circumstances under which Rush could terminate Dr. Nehra as Chairperson. The Offer Letter, taken by itself, contains a gap here; it does not say anything about whether or why Rush could terminate Dr. Nehra as

Chairperson before the end of his five year term. As noted, the parties agree that Rush could terminate Dr. Nehra before the end of his five-year term in that position only for cause. They dispute, however, the definition of cause. Dr. Nehra says the applicable definition is the relatively restrictive definition provided in the FEA's Terms and Conditions. Rush says the applicable definition of cause is the arguably broader definition supplied by Illinois common law. Dr. Nehra says that even if Illinois common law applies, it defines cause more narrowly than Rush contends.

The Court need not and, arguably, cannot resolve this dispute at this time. The absence of a definition of cause is a potential ambiguity in the Offer Letter even if, as Rush argues, that document stands on its own as an agreement completely separate from the FEA. There is at least some chance that extrinsic evidence would elucidate the point, which makes summary judgment inappropriate because neither side has had an opportunity to elicit such evidence. There is also at least some chance, as Dr. Nehra argues, that the appropriate definition of cause is found in the FEA. But that, too, is a point on which extrinsic evidence might be relevant; Dr. Nehra argues that the parties intended the Offer Letter and the FEA to be read together. One way or another, however, the Court sees nothing significant to be gained by trying to adjudicate this dispute now, before any significant oral discovery has taken place.

The Court does, however, need to comment on one argument made by Rush. In its reply brief, Rush contends that because the FEA contains an integration clause stating that it is the entire agreement between the parties on the subject it covers, it cannot be considered as part of a larger understanding that also includes the Offer Letter as Dr. Nehra contends. *See* Def.'s Reply at 9. This argument is legally infirm.

The integration clause precludes consideration of agreements, understandings, or representations that *predate* the FEA, not later agreements. *See W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666, 675 (7th Cir. 2015).

**2.    Damages**

Rush also seeks summary judgment on two points relating to the issue of recoverable damages. It contends that Dr. Nehra may not recover damages that extend beyond the date of trial, whenever that might be. Rush also contends that Dr. Nehra may not seek consequential damages to remedy alleged injury to his professional reputation.

Rush is correct that Dr. Nehra may not recover for damages that post-date the trial, whenever that turns out to be. In a case involving a breach of an employment contract, damages are "limited to [that which] plaintiff may have accrued up to the date of trial." *Lewis v. Loyola Univ. of Chi.*, 149 Ill. App. 3d 88, 94, 500 N.E.2d 47, 51 (1986); *See Mount Hope Cemetery Ass'n v. Weidenmann*, 139 Ill. 67, 28 N.E. 834 (1891); *Pokora v. Warehouse Direct, Inc.*, 322 Ill. App. 3d 870, 882, 751 N.E.2d 1204, 1214 (2001) (holding that *Mount Hope*, though modified in part, is still the law in Illinois). Damages beyond the date of trial are barred on the theory that they are speculative and uncertain. *See Lewis,* 149 Ill. App. 3d at 94, 500 N.E.2d at 51 (listing reasons that render damages post-dating a trial uncertain—the possibility of a party's death, proper termination of the contract, etc.).

This rule does not allow an injured party to stand idle in anticipation of bringing suit upon the contract's expiration, nor does it allow a party to bring multiple suits in an effort to recover the full contract price. The injured party is required to make reasonable

8

efforts to mitigate his damages. *Pokora*, 322 Ill. App. 3d at 880, 751 N.E.2d at 1213. And although a discharged employee may bring suit before the end of his contractual employment term, "after one recovery is had, that recovery is a bar to all future actions based upon the contract of employment." *Doherty v. Schipper & Block*, 250 Ill. 128, 134, 95 N.E. 74, 75 (1911); *see also Pokora*, 322 Ill. App. 3d at 882, 751 N.E.2d at 1214-15. The Court acknowledges that the date of trial is uncertain at this point. That said, the law regarding damages is clear: if Dr. Nehra prevails, he cannot recover damages for breach of contract that extend beyond the date of the trial.

Dr. Nehra argues that reputational damages are recoverable because his termination was public within the relevant medical community and that it damaged his reputation and ultimately lowered his chances of securing another high-level position. He asserts that Rush's public statements are inextricably linked to his termination because "they flow from it as a natural consequence and would not have occurred but for the breach." Pl.'s Mem. in Opp. to Mot. for Partial Summ. J. at 11. On the contrary, any reputational injury he faced necessarily stems from the public announcement of his termination. If Rush had terminated Dr. Nehra without announcing it, the claimed reputational injury would not exist. As Rush notes, nothing in Dr. Nehra's contracts prevented post-termination announcements by Rush or regulated their content. Therefore, Dr. Nehra's reputational injury is not based on a breach of any contractual term. He is not entitled to recover damages for loss of reputation even if he prevails on his breach of contract claim.

## Conclusion

The Court grants in part and denies in part defendant's motion for partial

9

summary judgment as more fully explained above [dkt. no. 50].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 20. 2015